**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK LANORITH,<br><br>                        Plaintiff,<br><br>        -against-<br><br>CITY OF NEW YORK, ARTHUR TRUSCELLI,<br>Individually, JOHN FANIZZI, Individually,<br>ANDREY SMIRNOV, Individually, NICHOLAS<br>VELEZ, Individually, MARTIN BANGHART,<br>Individually, RANDALL LITRELL,<br>Individually, and GERARD DELPRETE,<br>Individually,<br><br>                       Defendants. | **AMENDED**<br>**COMPLAINT**<br><br>15-CV-617 (NGG) (LB)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff PATRICK LANORITH, by his attorney, The Trainor Law Firm, P.C.,

complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages, and

attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which

are secured by these statutes and the United States Constitution.

## JURISDICTION

2.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.

3.      This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C.

§§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C.

§ 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.      Plaintiff PATRICK LANORITH is a thirty-seven (37) year old male and United States Citizen who resides in Staten Island, New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9.      At all times hereinafter mentioned, the individually named defendants, ARTHUR TRUSCELLI (Tax No. 931348), JOHN FANIZZI (Tax No. 903887), ANDREY SMIRNOV (Tax No. 931503), NICHOLAS VELEZ (Tax No. 933451), MARTIN BANGHART (Tax No. unknown), RANDALL LITRELL (Tax No. unknown), and GERARD DELPRETE (Tax No. unknown), and were duly sworn police officers of the NYPD, attached to the NYPD's Narcotics Bureau Staten Island ("NBSI"), and were acting under the supervision of the NYPD and according to their official duties.

10.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the

2

CITY OF NEW YORK.

11.     Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

"[Staten Island] has the fewest people of any borough in the city,
but it has big problems between police and the citizens they're sworn to protect."

Barry Paddock, et al., Staten Island, borough where Eric Garner died, has highest number of most-sued NYPD officers, N.Y. DAILY NEWS, July 28, 2014.

12.     On May 25, 2012, between 8:30 p.m. at 9:00 p.m., Plaintiff PATRICK LANORITH ("Mr. Lanorith") was lawfully present in the vicinity of 420 Netherland Avenue, Staten Island, New York, when Defendants Arthur Truscelli, John Fanizzi, Andrey Smirnov, Nicholas Velez, Martin Banghart, Randall Litrell, and Gerard DelPrete, without any lawful justification whatsoever, unlawfully assaulted him, broke his nose, and illegally arrested and imprisoned him.

13.     Before, during, and after the defendants beat him up and arrested him, Mr. Lanorith committed no crime or offense.  Likewise, at all times relevant to these events, Mr. Lanorith was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

14.     At the aforementioned time and place, Mr. Lanorith was with his friend, Dennis Gambino, and he was sitting in the front passenger seat of Mr. Gambino's automobile, which was lawfully parked on the street.  While they were in the vehicle, two of the defendants pulled up next to them in an unmarked NYPD vehicle.

15.     One of the defendants instructed Mr. Gambino to unlock and open the doors. Upon Mr. Gambino unlocking the vehicle doors, the defendants yanked out both Mr. Gambino

3

and Mr. Lanorith.  The defendants then placed handcuffs on Mr. Lanorith's wrists and arrested him, despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever.

16.    At this time, another unmarked NYPD vehicle drove down the street and an unmarked NYPD van pulled up behind this vehicle.  The other defendants arrived in these vehicles.

17.    As the defendants converged on the scene, Defendant Truscelli, who yanked Mr. Lanorith out of Mr. Gambino's vehicle, then pushed Mr. Lanorith into Mr. Gambino's vehicle and, without any provocation or legal cause, punched Mr. Lanorith in the face.  Thereafter, Defendants Fanizzi, Truscelli, Velez, Smirnov, Banghart, Litrell, and DelPrete, without any provocation or legal cause, began punching and kicking Mr. Lanorith with complete abandon. The defendants beat him  unconscious.  At no time did Mr. Lanorith in any way resist, obstruct, hit, or grab any of the defendants.

18.    Defendants Truscelli, Fanizzi, Smirnov, Velez, Banghart, Litrell, and DelPrete actively participated in beating up Mr. Lanorith and/or failed to intervene to prevent each other from illegally assaulting and imprisoning Mr. Lanorith.

19.    Upon illegally assaulted and falsely imprisoning him, the defendants transported Mr. Lanorith to the Emergency Room of Richmond University Medical Center for medical treatment, while he remained in police custody.  As a result of the defendants violently assaulting him, Mr. Lanorith suffered a broken nose; deep bruising and swelling on and around his face; multiple abrasions, contusions, and lacerations to his head; and broken blood vessels in his eyes.

20.    While in the Emergency Room and upon gaining consciousness, Mr. Lanorith observed, upon information and belief, two NYPD Internal Affairs Bureau ("IAB") officers in

4

his hospital room, and they began asking him questions about the defendants' encounter with him.  These questions, however, seemed only concerned with whether Mr. Lanorith was on drugs or drinking at the time of the encounter.  The two IAB officers advised that they would look into what the defendants did to him and left.

21.     Upon Mr. Lanorith receiving medical treatment and his diagnosis, the defendants then transported him to the NYPD's 120th Precinct, where he remained unlawfully imprisoned and in pain, suffering the effects of being violently assaulted by the defendants.   While Mr. Lanorith was in the jail cell at the 120th Precinct, he began bleeding from his head, which was in pain and aching.  He demanded medical attention, and a police officer gave him some tissues and informed him that, if he sought medical treatment, he would not get to court the next day. Nevertheless, Mr. Lanorith requested medical attention again, and the paramedics arrived at the 120th Precinct and transported Mr. Lanorith back to Richmond University Medical Center's Emergency Room.

22.     Still in police custody while in the Emergency Room, Mr. Lanorith's bleeding wound was treated with a topical skin adhesive to hold the wound edges together until it healed. Mr. Lanorith was treated, released, and brought back to the 120th Precinct for imprisonment, where he remained unlawfully imprisoned and in pain, while he awaited arraignment on the false charges filed against him by the defendants.

23.     Finally, on May 27, 2012, the defendants transported Mr. Lanorith from the 120th Precinct to the Richmond County Criminal Court for arraignment on the baseless charges filed under docket number 2012RI004877.  These charges were filed based upon the false allegations of Defendants Truscelli and Fanizzi.

24.     Defendants Truscelli and Fanizzi manufactured the underlying false allegations

and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Lanorith at trial.

25.     On May 27, 2012, Mr. Lanorith was arraigned on the false charges filed under docket number 2012RI004877.  Upon arraignment, the presiding Criminal Court judge set bail on Mr. Lanorith in the amount of $1,000.00 cash and/or bond.  Fortunately, Mr. Lanorith was able to make bail on May 27, 2012, and was eventually released from custody.

26.     The defendants arrested and initiated criminal proceedings against Mr. Lanorith despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

27.     The defendants initiated this prosecution for the purpose of covering up their unlawful and unjustified assault upon Mr. Lanorith.

28.     This false arrest, denial of Mr. Lanorith's fair trial rights, and malicious prosecution compelled him to return to the Richmond County Criminal Court to face these false charges on at least four (4) occasions when, on December 13, 2012, the Criminal Court judge dismissed this malicious prosecution against Mr. Lanorith outright.

29.     All of the events leading up to and culminating in Mr. Lanorith being subjected to excessive force, false arrest, denial of fair trial rights, and malicious prosecution occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

30.     All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and

6

supervising of its employees.

31.     The underlying application of excessive force, false arrest, denial of the right to fair trial, and malicious prosecution is not an isolated incident.  Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.  Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with Assault in the Second Degree.  See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had

said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . .  The [NYPD] has banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board.  From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping -man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after allegedly stomping on a suspect's head, authorities said.  NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie.  Solivan's mother and two younger brothers were in the University Avenue apartment at the time.  After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y.

8

DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2.5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

32.     What is more, the individual defendants were members of Staten Island's notorious Narcotics Bureau, which is commonly referred to as "NBSI."  As recently as July 28, 2014, the New York Daily News exposed how "Seven of the city's top 10 most-sued officers – and 14 of the city's top 50 most-sued officers – are assigned to a Staten Island narcotics unit working in the territory of the 120th Precinct."  Barry Paddock, et al., Staten Island, borough where Eric Garner died, has highest number of most-sued NYPD officers, N.Y. DAILY NEWS, July 28, 2014, http://www.nydailynews.com/new-york/staten-island-highest-number-most-sued-nypd-officers-article-1.1882160#ixzz38rVpgLGc (emphasis added).  The Daily News uncovered

that detectives and officers assigned to NBSI claim the dubious distinction of being disproportionately sued for violating individuals' civil rights. Id. ("The unit has racked up the staggering amount of lawsuits despite being the smallest narcotics bureau in the city. With just 40 officers and supervisors, it's roughly one-fifth the size of Brooklyn North Narcotics.").

33.    Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants to violate Mr. Lanorith's civil rights.

34.    Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

35.    As a result of the foregoing, Plaintiff PATRICK LANORITH, has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

36.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "35" with the same force and effect as if fully set forth herein.

37.    All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

10

38.     All of these aforementioned acts deprived Plaintiff PATRICK LANORITH of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

39.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

40.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

41.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

42.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

43.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "42" with the same force and effect as if fully set forth herein.

44.     The defendants arrested Plaintiff PATRICK LANORITH without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

45.     The defendants caused Plaintiff PATRICK LANORITH to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, and deprived of his liberty.

46.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

47.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48.     The defendants employed force against Plaintiff PATRICK LANORITH that was excessive, objectively unreasonable, and in a clear violation of Plaintiff's constitutional rights.

49.     At no time did Plaintiff PATRICK LANORITH pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

50.     As a result of the defendants' conduct, Plaintiff PATRICK LANORITH was subjected to excessive force and sustained physical injuries, including, but not limited to, a broken nose; deep bruising and swelling on and around his face; multiple abrasions, contusions, and lacerations to his head; broken blood vessels in his eyes; an open wound; substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

51.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual

defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

52.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53.     The defendants falsified the information against Plaintiff PATRICK LANORITH likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiff.

54.     The defendants caused Plaintiff PATRICK LANORITH to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecution was dismissed outright on December 13, 2012.

55.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Malicious Prosecution under 42 U.S.C. § 1983)

56.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "55" with the same force and effect as if fully set forth herein.

57.     The defendants initiated, commenced, and continued a malicious prosecution against Plaintiff PATRICK LANORITH.

58.     The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff.

13

59.     The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecution.

60.     The defendants caused Plaintiff PATRICK LANORITH to be prosecuted without any probable cause until all of the charges against him were dismissed outright on December 12, 2012, resulting in a favorable termination for Plaintiff.

61.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

62.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63.     The defendants had an affirmative duty to intervene on behalf of Plaintiff PATRICK LANORITH, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

64.     The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

65.     As a result of the defendants' conduct, Plaintiff PATRICK LANORITH was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

14

66.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

67.     All of the foregoing acts of the defendants deprived Plaintiff PATRICK LANORITH of federally protected rights, including, but not limited to, the right:

A.     To be free from deprivation of civil rights and liberty;

B.     To be free from false arrest/unlawful imprisonment;

C.     To be from excessive force;

D.     To be free from denial of the right to a fair trial;

E.     To be free from malicious prosecution; and

F.     To be free from the failure to intervene.

68.     As a result, Plaintiff PATRICK LANORITH is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff PATRICK LANORITH demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorneys' fees and the costs and disbursements of this action; and

(D)    such other and further relief as the Court deems just and proper.


**Dated:** New York, New York
          July 7, 2015

Respectfully submitted,

**THE TRAINOR LAW FIRM, P.C.**
26 Broadway, Suite 2100
New York, New York 10004
Tel:  (212) 323-7410
Fax: (212) 323-7411


By:    *Craig Trainor*
       CRAIG TRAINOR (CT 1823)

Attorney for Plaintiff PATRICK LANORITH

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

PATRICK LANORITH,

                             Plaintiff,

            -against-

CITY OF NEW YORK, ARTHUR TRUSCELLI,
Individually, JOHN FANIZZI, Individually,
ANDREY SMIRNOV, Individually, NICHOLAS
VELEZ, Individually, MARTIN BANGHART,
Individually, RANDALL LITRELL,
Individually, and GERARD DELPRETE,
Individually,

                          Defendants.

15-CV-617 (NGG) (LB)

# AMENDED COMPLAINT

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004