D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PATRICK LANORITH,

                Plaintiff,

      -against-

ARTHUR TRUSCELLI, JOHN FANIZZI,
ANDREY SMIRNOV, NICHOLAS VELEZ,
RANDALL LITRELL, and GERARD
DELPRETE,

                Defendants.
------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 22 2017 ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**

**15-CV-617 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

    On February 6, 2015, Plaintiff Patrick Lanorith commenced this action pursuant to

42 U.S.C. § 1983 against Defendants the City of New York (the "City") and New York City

Department ("NYPD") Police Officers Arthur Truscelli, John Fanizzi, Andrey Smirnov,

Nicholas Velez, and John Does 1 through 5, in their individual capacities. (Compl. (Dkt. 1).)

On July 7, 2015, Plaintiff amended his Complaint to remove the John Doe Defendants and to add

Martin Banghart, Randall Litrell, and Gerard DelPrete as additional defendants.[1] (Am. Compl.

(Dkt. 9).) Plaintiff's lawsuit arises from his arrest on May 25, 2012 (the "Incident"), and

subsequent prosecution for assault and criminal possession of a controlled substance. He asserts

the following causes of action against Defendants: (1) false arrest; (2) excessive force;

(3) malicious prosecution; (4) denial of a fair trial; and (5) failure to intervene.

    All claims against the City and Banghart have been dismissed. (See Order Adopting

R. & R. (Dkt. 28); Stip. of Dismissal (Dkt. 31).) Defendants move for partial summary

---

[1] The Clerk of Court is respectfully DIRECTED to amend the case caption to (1) reflect the fact that the John Doe
Defendants have been removed from the lawsuit; and (2) change the spelling of Nicholas Velez's name from
"Nicolas Velez" to "Nicholas Velez."

judgment, seeking dismissal of the following claims: (1) false arrest as to all Defendants; (2) excessive force as to Litrell, DelPrete, Velez, Fanizzi, and Smirnov; (3) malicious prosecution as to Litrell, DelPrete, Velez, Smirnov, and Truscelli; (4) denial of a fair trial as to Litrell, DelPrete, Velez, Smirnov, and Truscelli; and (5) failure to intervene as to Litrell, DelPrete, Velez, and Smirnov. (Defs. Mot. for Partial Summ. J. ("Mot.") (Dkt. 34); Defs. Mem. in Supp. of Mot. ("Defs. Mem.") (Dkt. 35).) Plaintiff opposes Defendants' Motion. (Pl. Mem. in Opp'n to Mot. ("Pl. Opp'n") (Dkt. 38).)

For the foregoing reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The facts in this opinion are drawn, where possible, from the parties' statements of undisputed facts, submitted pursuant to Local Rule 56.1.[2] (See Defs. R. 56.1 Statement ("Defs. 56.1") (Dkt. 37); Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 40); Defs. Opp'n to Pl. 56.1 ("Defs. Opp'n 56.1") (Dkt. 42).) See also Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (The court "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." (internal quotation marks and citations omitted)). Except as otherwise indicated, the facts in this section are not in dispute.[3]

---

[2] Where the relevant facts are not in dispute, the court cites to the parties' Rule 56.1 statements and omits the underlying citations to the record.

[3] On various occasions in his Rule 56.1 Statement, Plaintiff cites his own deposition testimony in support of assertions of material fact. (See, e.g., Pl. 56.1 ¶¶ 83, 85, 91.) Defendants assert a blanket objection as to these assertions: "Plaintiff has not included sufficient admissible evidence in the record to support [his] allegations." (See, e.g., Defs. Opp'n 56.1 ¶¶ ¶¶ 83, 85, 91.) Defendants' denial on this basis does not create a genuine dispute of material fact, as Defendants both fail to explain why Plaintiff's deposition testimony is not admissible evidence or cite affirmative evidence in support of their position. Cf. Scott v. Harris, 550 U.S. 372, 380 (2007) (explaining that "opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36 (2d Cir. 2012) (summary order) ("Conclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact." (quoting Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)).

## A. Plaintiff's May 25, 2012, Police Encounter

At roughly 8:00 p.m. on May 25, 2012, Plaintiff and his friend, Dennis Gambino ("D.G."), went to a store in Staten Island to get something to eat. (Pl. 56.1 ¶¶ 65-66; Defs. Opp'n 56.1 ¶¶ 65-66.) While there, Truscelli states that he observed D.G. engaged in what appeared to be a drug transaction near a deli. (Defs. 56.1 ¶ 7 (citing Ex. B to Mindrutiu Decl. in Supp. of Mot. ("Defs. Truscelli Dep. Tr.") (Dkt. 36-2) 32:25-33:11).) Plaintiff denies this allegation, pointing to the fact that Truscelli's supervisor, Smirnov, did not observe D.G. engaged in any criminal activity. (Pl. 56.1 ¶ 7 (citing Ex. C to Trainor Decl. in Opp'n to Mot. ("Pl. Smirnov Dep. Tr.") (Dkt. 39-3) 32-35).)

After buying their food, Plaintiff and D.G. drove away from the store in D.G.'s car. (Pl. 56.1 ¶ 66; Defs. Opp'n 56.1 ¶ 66.) Truscelli, who was accompanied in his vehicle by Velez and Smirnov, followed D.G.'s car as it left the area. (Defs. 56.1 ¶ 9; Pl. 56.1 ¶ 9.) Defendants allege that Truscelli and Smirnov smelled the odor of burning phencyclidine ("PCP") as they followed D.G.'s car and that Truscelli told Velez that he smelled PCP. (Defs. 56.1 ¶¶ 11-12 (citing Defs. Truscelli Dep. Tr. 37:15-17; Ex. C. to Mindrutiu Decl. ("Defs. Smirnov Dep. Tr.") (Dkt. 36-3) 33:22-34:7; and Ex. D. to Mindrutiu Decl. ("Defs. Velez Dep. Tr.") (Dkt. 36-4) 54:2-9).) Plaintiff denies that either he or D.G. was smoking PCP and alleges that neither of them "had any PCP on them at any time during this incident." (Pl. 56.1 ¶ 11 (citing Ex. I to Trainor Decl. ("Pl. D.G. Dep. Tr.") (Dkt. 39-9) 69:23-70:9).)

According to Defendants, the police officers next pulled D.G.'s car over. (Defs. 56.1 ¶ 13 (citing Defs. Smirnov Dep. Tr. 39:15-18).) According to Plaintiff, D.G. voluntarily parked the car so that Plaintiff and D.G. could eat the sandwiches they had just purchased. (Pl. 56.1 ¶¶ 13, 66-67 (citing Ex. A to Trainor Decl. ("Pl. Lanorith Dep. Tr.") (Dkt. 39-1) 33:13-34:22 and

Pl. D.G. Dep. Tr. 36:24-37:7, 39:7-40:22).) Once the car was parked, Truscelli, Velez, and Smirnov approached the vehicle.[4] (Defs. 56.1 ¶ 14; Pl. 56.1 ¶ 14.) D.G. was seated in the driver's seat and Plaintiff was in the front passenger seat. (Defs. 56.1 ¶ 2; Pl. 56.1 ¶ 2.) Truscelli approached Plaintiff's side of the vehicle and another officer, whose name Plaintiff cannot recall, came up to D.G.'s side of the car. (Defs. 56.1 ¶¶ 3, 5-6; Pl. 56.1 ¶¶ 3, 5-6.) Each of the officers stated: "Get the fuck out of the car." (Pl. 56.1 ¶¶ 70-71; Defs. Opp'n 56.1 ¶¶ 70-71.)

Much of what happened next is in dispute. The court details each party's version of the subsequent events. Defendants assert that Truscelli, Smirnov, and Velez "all attempted to [handcuff] D.G." (Defs. 56.1 ¶ 15 (citing Defs. Smirnov Dep. Tr. 44:24-45:23 and Defs. Velez Dep. Tr. 65:12-66:5).) Smirnov assisted Plaintiff out of the car and called Fanizzi and Banghart to request backup. (Id. ¶ 18 (citing Defs. Smirnov Dep. Tr. 66:4-8; 51:3-52:8); ¶ 35 (citing Ex. F to Mindrutiu Decl. ("Defs. Fanizzi Dep. Tr.") (Dkt. 39-6) 57:9-60:5).) Once Fanizzi and Banghart arrived on the scene, Smirnov instructed Fanizzi to handcuff Plaintiff. (Id. ¶ 36 (citing Defs. Fanizzi Dep. Tr. 71:9-19, 73:14-23).) Smirnov then "went back to deal with D.G." (Id. ¶ 18 (citing Defs. Smirnov Dep. Tr. 66:4-8, 51:3-52:8).) Fanizzi testified at his deposition that Plaintiff was "flailing his arms" as Fanizzi tried to handcuff him and as Fanizzi "went to put the cuff on him . . . [they both] slid off the car" and onto the ground. (Def. Fanizzi Dep. Tr. 71:4-73:16.) At some point, DelPrete and Litrell also arrived at the scene to provide backup. (Id. ¶ 42 (citing Ex. G to Mindrutiu Decl. ("Defs. DelPrete Dep. Tr.") (Dkt. 36-7) 40:9-41:10).) When DelPrete arrived, he smelled a strong odor of PCP and observed Banghart interacting with

---

[4] The court notes that Defendants' Rule 56.1 Statement is internally inconsistent as to how many officers first approached D.G.'s vehicle. (Compare e.g., Defs. 56.1 ¶ 3 ("Two police officers came up to [D.G.'s] car, one on plaintiff's side and the other on D.G.'s side."), with, e.g., Defs. 56.1 ¶ 14 ("All three officers approached the car.").)

Plaintiff and Fanizzi "slumped over in obvious pain." (Id. ¶ 43 (citing Defs. DelPrete Dep. Tr. 46:9-25), ¶ 45 (citing Defs. DelPrete Dep. Tr. 56:5-9).)

Plaintiff's version of the Incident is as follows. When the officers told Plaintiff and D.G. to exit the vehicle, D.G. unlocked the car doors. (Pl. 56.1 ¶ 72 (citing Pl. Lanorith Dep. Tr. 41:15-20).) Truscelli opened the passenger door, yanked Plaintiff out of the car, placed handcuffs on him, slammed him onto the car, forced him towards the back of the vehicle, and punched him in the nose. (Id. ¶¶ 72-75 (citing Pl. Lanorith Dep. Tr. 41:24-25, 42:1-45:12, 46:20-24).) The other officers then began to "rain[] punches and kicks upon [Plaintiff]." (Id. ¶ 76 (citing Pl. Lanorith Dep. Tr. 47:7-11).) Smirnov, Fanizzi, DelPrete, and Banghart each had "aggressive physical interaction[s]" with Plaintiff. (Id. ¶¶ 78-81 (citing Pl. Smirnov Dep. Tr. 50-52; Ex. D to Trainor Decl. ("Pl. Fanizzi Dep. Tr.") (Dkt. 39-4) 66-71; Ex. E to Trainor Decl. ("Pl. DelPrete Dep. Tr.") (Dkt. 39-5) 59:8-18; Ex. H. to Trainor Decl. ("Pl. Banghart Dep. Tr.") (Dkt. 39-8) 46:21-47:13, 53:1-15).) Plaintiff lost consciousness during the assault and did not regain consciousness until he awoke in a hospital. (Pl. 56.1 ¶¶ 83-84 (citing Pl. Lanorith Dep. Tr. 52:11-24).) Plaintiff admits that neither Litrell nor Velez had physical contact with him during the Incident, as they were both dealing with D.G. (Defs. 56.1 ¶¶ 19, 20, 46, 47; Pl. 56.1 ¶¶ 19, 20, 46, 47.)

It is uncontested that Litrell escorted Plaintiff to the hospital. (Pl. 56.1 ¶ 89; Defs. Opp'n 56.1 ¶ 89.) It is also undisputed that Plaintiff, Fanizzi, Velez, and Truscelli received treatment at a hospital for injuries sustained during the Incident. (See Defs. 56.1 ¶¶ 16-17, 37, 39; Pl. 56.1 ¶¶ 16-17, 37, 39, 83-84, 87; Defs. Opp'n 56.1 ¶¶ 83-84, 87.) Plaintiff suffered a broken nose. (Pl. 56.1 ¶ 91; Defs. Opp'n 56.1 ¶ 91.) Smirnov sprained his right ankle and Velez sustained a shoulder injury as a result of their interactions with D.G. (Defs. 56.1 ¶¶ 16-17; Pl. 56.1

¶¶ 16-17.) Fanizzi tore his rotator cuff and bicep muscle, requiring surgery on his shoulder, and, ultimately, his retirement from the NYPD. (Defs. 56.1 ¶¶ 37, 41-42; Pl. 56.1 ¶¶ 37, 41-42.) Fanizzi allegedly told Smirnov that "he struggled with plaintiff and his shoulder went out." (Defs. 56.1 ¶ 40; Pl. 56.1 ¶ 40.) While Plaintiff does not dispute that Fanizzi told another officer that he was in pain and sustained a shoulder injury (see Defs. 56.1 ¶ 39; Pl. 56.1 ¶ 39), Plaintiff maintains that he did not cause this injury (see Pl. 56.1 ¶ 37 (citing Pl. Fanizzi Dep. Tr. 72:16-23).)

### B. Plaintiff's Arrest and Prosecution

Plaintiff was arrested at the scene for criminal possession of a controlled substance, assault, resisting arrest, and disorderly conduct. (Defs. 56.1 ¶ 51; Pl. 56.1 ¶ 51.) The arrest report lists Truscelli as the arresting officer. (See Ex. H to Mindrutiu Decl. ("Arrest Report") (Dkt. 36-8).)

On May 26, 2012, Plaintiff was charged with assault in the second degree pursuant to New York Penal Law § 120.05(3) and criminal possession of a controlled substance in the seventh degree pursuant to New York Penal Law § 220.03. (See Ex. I to Mindrutiu Decl. ("Crim. Compl.") (Dkt. 36-9).) Truscelli signed the criminal complaint. (See id.) On May 27, 2012, Plaintiff was arraigned and pleaded not guilty to these charges. (Defs. 56.1 ¶¶ 57, 59; Pl. 56.1 ¶¶ 57, 59.) Plaintiff was released the same day after making bail. (Pl. 56.1 ¶ 92; Defs. Opp'n 56.1 ¶ 92.) In connection with these charges, Plaintiff returned to criminal court on four separate occasions. (Pl. 56.1 ¶ 93; Defs. Opp'n 56.1 ¶ 93.) Ultimately, Plaintiff's criminal case was dismissed on speedy trial grounds. (Defs. 56.1 ¶ 60; Pl. 56.1 ¶ 60.)

## C. The Instant Lawsuit

On April 15, 2014, prior to filing the instant lawsuit, Plaintiff wrote to the Clerk of Court for the Criminal Court of the City of New York, Richmond County, requesting a copy of the court's file in Plaintiff's criminal case for use "in connection with a civil matter." (See Ex. J to Trainor Decl. ("Apr. 15, 2014, Ltr.") (Dkt. 39-10).) Plaintiff alleges that he received a copy of the court's file "but it only revealed the names of Defendants Truscelli, Fanizzi, Smirnov, and Velez."[5] (Pl. 56.1 ¶ 96.) On January 14, 2015, Plaintiff requested a copy of the Richmond County District Attorney's (the "DA's Office") records regarding Plaintiff's criminal case. (See Ex. K to Trainor Decl. ("Jan. 14, 2015, Ltr.") (Dkt. 39-11).) Plaintiff alleges that he never received a response from the DA's Office.[6] (Pl. 56.1 ¶ 99.)

Plaintiff initiated this lawsuit on February 6, 2015, naming the City, Truscelli, Fanizzi, Smirnov, and Velez as defendants. (Compl.) He also named John Doe 1 through 5 as defendants and identified those Doe defendants as members of the NYPD's Narcotics Bureau Staten Island ("NBSI") who assaulted him "[o]n May 25, 2012, between 8:30 p.m. [and] 9:00 p.m. . . . in the vicinity of 420 Netherland Avenue, Staten Island, New York." (Id. ¶¶ 9, 12.) On June 25, 2015, Defendants served Plaintiff with initial disclosures pursuant to Federal Rule of Civil Procedure 26. (Ex. L to Trainor Decl. ("Defs. Initial Disclosures") (Dkt. 39-12).) These initial disclosures indicated that DelPrete, Litrell, and Banghart were likely to have discoverable information related to the facts and circumstances surrounding Plaintiff's arrest. (See id.)

On July 7, 2015, Plaintiff amended his Complaint to remove the John Doe Defendants and add Banghart, Litrell, and Delprete as additional defendants. (Am. Compl.) Defendants

---

[5] Defendants contest this assertion of fact but fail to provide competing evidence in support of their denial. (See Defs. Opp'n 56.1 ¶¶ 96-99.)

[6] See supra note 4.

consented to the amendment but reserved their right to seek dismissal of any claims that may be time-barred.[7] (Pl. 56.1 ¶ 108.)

## II. LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zanith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving may not rely on "conclusory allegations." Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir.1990); see Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36 (2d Cir. 2012) (summary order) ("Conclusory allegations, conjecture, and speculation, . . . are insufficient to create a genuine issue of fact." (quoting Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003)). "[T]he Court 'must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

---

[7] Defendants contest this assertion of fact but fail to provide competing evidence in support of their denial. (See Defs. Opp'n 56.1 ¶ 108.)

inferences against the movant.'" Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.,
822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting Beyer v. Cty. of Nassau, 524 F.3d 160, 163
(2d Cir. 2008)).

## III.   DISCUSSION

Defendants move for partial summary judgment, seeking dismissal of the following
claims: (1) false arrest as to all Defendants; (2) excessive force as to Litrell, DelPrete, Velez, and
Smirnov; (3) malicious prosecution as to Litrell, DelPrete, Velez, Smirnov, and Truscelli;
(4) denial of a fair trial as to Litrell, DelPrete, Velez, Smirnov, and Truscelli; and (5) failure to
intervene as to Litrell, DelPrete, Velez, and Smirnov. (Defs. Mem. at 1.) The court addresses
each claim in turn.

### A.  False Arrest

Defendants move for summary judgment on Plaintiff's false arrest claim as to all
Defendants. (Defs. Mem. at 4.) Defendants argue that (1) the claims against DelPrete and Litrell
are time-barred; (2) Plaintiff cannot show that Velez and Litrell were personally involved in
Plaintiff's arrest; and (3) in any event, all of the Defendants are entitled to qualified immunity on
Plaintiff's false arrest claim because it was objectively reasonable for Truscelli to believe that
there was probable cause to arrest Plaintiff. (Id. at 4-9.)

#### 1.   Plaintiff's False Arrest Claims Against DelPrete and Litrell Are Timely

The statute of limitations for a Section 1983 claim that accrued in New York is three
years. Jaghory v. N.Y.S. Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997). The statute of
limitations for a false arrest claim brought pursuant to Section 1983 "begins to run at the time the
claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397
(2007). Here, Plaintiff's cause of action accrued on May 25, 2012—the date of Plaintiff's arrest.

See Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir. 1990) (holding that claimant's causes of action accrued on the day of his allegedly unlawful arrest rather than the day of his arraignment).

There is no dispute that Plaintiff brought his claims against Defendants Truscelli, Fanizzi, Smirnov, and Velez within the applicable statute of limitations. (See Pl. 56.1 ¶ 112; Defs. Opp'n 56.1 ¶ 112.) The dispute lies in whether the claims against DelPrete and Litrell are time-barred. Plaintiff appears to concede that the limitations period expired before he added DelPrete and Litrell as defendants to this action on July 7, 2015. (See Pl. Opp'n at 3.) He asserts, however, that the claims against these officers "relate back" to the date of the original complaint— February 2, 2015—and are, therefore, timely. (Id. at 3-4.)

Under Federal Rule of Civil Procedure 15, a complaint may "relate[] back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c). New York law provides a more forgiving principle of relation back in the John Doe context than does the federal relation back doctrine. Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013). Pursuant to Section 1024 of the New York Civil Practice Law and Rules ("CPLR"),

> [a] party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. A plaintiff relying on § 1024 must: (1) "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) "describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." Hogan, 738 F.3d at 519 (internal quotation marks and citations omitted).

Here, Plaintiff clearly "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant[s] by name." Id. Plaintiff requested files related to his criminal case from both the relevant court and the DA's Office.[8] (See Apr. 15, 2014, Ltr.; Jan. 14, 2015, Ltr.) These requests "only revealed the names of Defendants Truscelli, Fanizzi, Smirnov, and Velez." (Pl. 56.1 ¶ 96.) It was not until June 25, 2015, when Defendants served Plaintiff with their initial disclosures, that Plaintiff obtained the names of the John Doe defendants.[9] (See Defs. Initial Disclosures.) Plaintiff amended his complaint shortly thereafter to remove the John Doe Defendants and add Banghart, Litrell, and DelPrete as additional defendants. (Am. Compl.) These steps clearly demonstrate Plaintiff's diligence in ascertaining the identities of the officers involved in the Incident.

Plaintiff also meets the second Section 1024 requirement. In his original complaint, Plaintiff identified the John Doe defendants as members of the NYPD's Narcotics Bureau Staten Island ("NBSI") who assaulted him "[o]n May 25, 2012, between 8:30 p.m. [and] 9:00 p.m. . . . in the vicinity of 420 Netherland Avenue, Staten Island, New York." (Compl. ¶¶ 9, 12.) Plaintiff described "with particularity the date, time, and location of the alleged . . . incident," Hogan, 738 F.3d at 519, and identified the John Does as members of a specific NYPD bureau. These allegations are sufficiently detailed so as to provide "notice to the John Does that they [were] the intended defendants." Id.

---

[8] Plaintiff eventually obtained a copy of the DA Office's records on August 15, 2016, from defense counsel in this action. (Pl. 56.1 ¶ 100; Defs. Opp'n 56.1 ¶ 100.)

[9] Defendants assert that Plaintiff did not exercise due diligence because "at least as early as March 4, 2015, plaintiff's counsel was in contact with defense counsel about this matter and . . . could have requested information about the two missing police officers" but "has not claimed to [have done] so." (Defs. Reply at 4.) The court notes that while it may have been wise for Plaintiff to ask Defendants for this information, the fact that Plaintiff did not do so is not dispositive of the inquiry.

Accordingly, the court finds that Plaintiff's false arrest claims against DelPrete and Litrell "relate back" to the date of the original complaint— February 6, 2015—and are therefore timely.

### 2. Plaintiff's False Arrest Claim Against Velez Is Dismissed

Defendants argue that Plaintiff has not demonstrated that Velez and Litrell were personally involved in Plaintiff's arrest. (Defs. Mem. at 6.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citation omitted). Personal involvement can be shown by evidence that a defendant "participated directly in the alleged constitutional violation" or, if defendant was a supervisory official, he or she:

> after being informed of the violation through a report or appeal, failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, . . . was grossly negligent in supervising subordinates who committed the wrongful acts, or . . . exhibited deliberate indifference to the rights of [an individual] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Upon review of the parties' Rule 56.1 statements and briefing on Defendants' Motion, the court concludes that Plaintiff has failed to put forth any evidence demonstrating that Velez was personally involved in Plaintiff's arrest. Accordingly, Plaintiff's false arrest claim is dismissed.

However, the court cannot conclude as a matter of law that Litrell was not personally involved in Plaintiff's arrest. (Defs. Mem. at 6.) Litrell did not have any physical contact with Plaintiff during the Incident; however, the parties agree that Litrell took Plaintiff, in handcuffs, to

12

the hospital for medical treatment after he was arrested. (Defs. 56.1 ¶¶ 46-47; Pl. 56.1 ¶¶ 46-47, 89; Defs. Opp'n ¶ 89.) In addition, Litrell testified at his deposition that he restrained Plaintiff on the hospital bed and eventually transported him from the hospital to the precinct. (See Ex. F. to Trainor Decl. ("Pl. Litrell Dep. Tr.") 60:19-61:4, 64:11-24.) In light of these facts, the court cannot conclude as a matter of law that Litrell was not personally involved in Plaintiff's alleged false arrest.

3. Defendants Truscelli, Fanizzi, Smirnov, Litrell, and DelPrete are Not Entitled to Qualified Immunity as a Matter of Law

a. *Legal Standard*

Claims for false arrest under Section 1983 "are analyzed pursuant to the same standards as the applicable state law's false arrest tort." Nzegwu v. Friedman, 605 F. App'x 27, 29 (2d Cir. 2015) (summary order) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). To prevail on a false arrest claim under New York law, "a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Id. (quoting Jocks, 316 F.3d at 134-35).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Schwartz v. Marcantonatos, 567 F. App'x 20, 22 (2d Cir. 2014) (summary order) (quoting Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995)). "The question of whether or not probable cause existed may be determinable as a matter of law if

there is no dispute as to the pertinent events and the knowledge of the officers." <u>Weyant</u>, 101 F.3d at 852.

Moreover, "under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable," entitling an officer to qualified immunity. <u>Jenkins v. City of N.Y.</u>, 478 F.3d 76, 87-88 (2d Cir. 2007). "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Id.</u> at 87 (quoting <u>Lennon v. Miller</u>, 66 F.3d 416, 423-24 (2d Cir. 2005)).

      *b. Analysis*

Defendant appears to argue that there was probable cause for Plaintiff's arrest for criminal possession of a controlled substance based on (1) Truscelli's statement that he observed D.G. engaged in a drug transaction; and (2) the allegation that "the smell of PCP was emanating from the car in which D.G. and the plaintiff were riding." (Defs. Mem. at 8.) Alternatively, Defendants argue that it was at least reasonable for Fanizzi, Smirnov, Litrell, and DelPrete to rely on Truscelli's statement that he observed D.G. engaged in a drug transaction, entitling each of the Defendants besides Truscelli to qualified immunity on Plaintiff's false arrest claim. (<u>Id.</u>) Finally, Defendants contend that Truscelli is also entitled to qualified immunity because there was probable cause "for at least a resisting arrest charge," as it is undisputed that Fanizzi suffered a shoulder injury during the Incident and went to the hospital. (<u>Id.</u> at 9.)

Plaintiff correctly points out that multiple disputed issues of material fact preclude granting summary judgment here. First, Truscelli's report that he observed D.G. engaged in a drug transaction is thoroughly in dispute. (<u>See</u> Defs. Truscelli Dep. Tr. 32:25-33:11.) Plaintiff refers the court to the deposition of Truscelli's supervisor, Smirnov, in which Smirnov testified

that he did not observe D.G. engaged in criminal activity outside his vehicle. (Pl. Opp'n

at 11-12; see Pl. Smirnov Dep. Tr. 34:2-25; 35:14-17.) In addition, there is a genuine dispute as

to whether Plaintiff and D.G. were smoking PCP in D.G.'s vehicle. Truscelli and Smirnov allege

that they smelled PCP as they were following D.G.'s car. (See Defs. Truscelli Dep.

Tr. 37:15-17; Defs. Smirnov Dep. Tr. 33:22-34:7.) However, Plaintiff refers the court to D.G.'s

deposition, in which he testified that there were no drugs recovered from his car, his person, or

Plaintiff's person. (See Pl. D.G. Dep. Tr. 69:23-70:9).

These factual disputes can only be resolved through credibility determinations, which are

not properly considered on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 255

("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge, whether he is ruling on a

motion for summary judgment or for a directed verdict."); Jeffreys v. City of N.Y., 426 F.3d 549,

553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the

events are matters for the jury, not for the court on summary judgment.") Accordingly, the

question of whether there was probable cause, or even arguable probable cause, for Plaintiff's

arrest is properly left for a jury to decide.[10] Defendants' Motion with respect to Plaintiff's false

arrest claim against Truscelli, Fanizzi, Smirnov, Litrell, and DelPrete is therefore denied.

---

[10] The court rejects Defendants' argument that there was probable cause to arrest Plaintiff because Plaintiff resisted arrest. "Under New York law, an essential element of the offense of resisting arrest is that the arrest allegedly resisted was 'authorized.'" Weyant, 101 F.3d at 855 (citing N.Y. Penal Law § 205.30). Because the court cannot determine as a matter of law that there was probable cause for Plaintiff's arrest, it cannot conclude that there was probable cause for a resisting arrest charge. See Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003) ("It is well established in New York that 'probable cause to arrest is a prerequisite for making an authorized arrest,' and if there is no probable cause to arrest a person, that person 'cannot be guilty of resisting arrest.'" (quoting People v. Mohamadou, 698 N.Y.S.2d 445, 447-48 (N.Y. Crim. Ct. 1999)).

## B. Excessive Force

Defendants move for summary judgment with respect to Plaintiff's excessive force claim against Litrell, DelPrete, Velez, and Smirnov. (Defs. Mem. at 9.) They argue that (1) Plaintiff's claims against DelPrete and Litrell are time-barred; and (2) Plaintiff's excessive force claims against DelPrete, Litrell, Fanizzi, Velez, and Smirnov should be dismissed because those officers were not personally involved in the alleging beating of Plaintiff. (Id. at 9-10.)

### 1. Plaintiff's Excessive Force Claims Against DelPrete and Litrell Are Timely

As articulated above, the statute of limitations for a Section 1983 claim that accrued in New York is three years. Jaghory, 131 F.3d at 331. An excessive force claim brought pursuant to Section 1983 "accrues when the use of force occurred." Jefferson v. Kelly, No. 06-CV-661 (NGG) (LB), 2008 WL 1840767, at *3 (E.D.N.Y. Apr. 22, 2008) (citing Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980)). The statute of limitations for Plaintiff's excessive force claim therefore accrued on May 25, 2012. For the reasons articulated supra in Section III.A.1., Plaintiff's excessive force claims against DelPrete and Litrell "relate back" to the date of the original complaint—February 6, 2015—and are therefore timely.

### 2. Plaintiff's Excessive Force Claim Against Velez and Litrell Are Dismissed But His Claims Against DelPrete, Fanizzi, and Smirnov Survive

A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). Under this standard, the determinative question is whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. Reasonableness is judged "from the perspective of a reasonable officer on the scene," and "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'

violates the Fourth Amendment." Id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). The court considers the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Defendants assert that Plaintiff has failed to put forth evidence demonstrating that DelPrete, Litrell, Fanizzi, Velez, and Smirnov were involved in applying excessive force against Plaintiff. (Defs. Mem. at 9-10.) In response, Plaintiff argues that his deposition testimony "establishes the personal involvement of these defendants." (Pl. Opp'n at 15.) Plaintiff testified that Truscelli "started hitting [him]" and "then they all started. It was like, [ ] raining punches and kicks." (Pl. Lanorith Dep. Tr. 47:7-11.) Plaintiff further argues that the Smirnov, Fanizzi, and DelPrete's own deposition testimony establishes that they each had an "aggressive and forceful physical interaction" with Plaintiff. (Pl. Opp'n at 16-17; see Pl. Smirnov Dep. Tr. 50-52 (Smirnov testifying that he "grabbed" Plaintiff); Pl. Fanizzi Dep. Tr. 66-68 (Fanizzi testifying that he "grabbed two hands behind [Plaintiff] [and] went to place one cuff on him" and Plaintiff "struggl[ed] with [him] and we like slid off the car and then down to the floor"); see Pl. DelPrete Dep. Tr. 59:8-15 (DelPrete testifying that he punched Plaintiff in his ribs "[t]o try to get control over [Plaintiff's] hands").) In sum, Plaintiff asserts that "viewing [his] testimony that punches and kicks were raining down upon him and [D.G.], as they were next to each other, in the light most favorable to him, and combining it with the defendants' own testimony of applying physical force to [him], the Court must deny summary judgment." (Pl. Opp'n at 17.)

The court determines that it is proper to grant summary judgment with respect to Plaintiff's excessive force claims against Velez and Litrell. Plaintiff has failed to put forth any

17

evidence which demonstrates that these defendants were personally involved in applying excessive force against him. In fact, Plaintiff does not dispute that neither Velez nor Litrell had any physical contact with Plaintiff during the Incident. (See Defs. 56.1 ¶¶ 19, 46, 47; Pl. 56.1 ¶¶ 19, 46, 47.) Accordingly, Plaintiff's excessive force claims against Velez and Litrell are dismissed.

On the other hand, the court finds that factual disputes preclude summary judgment with respect to the excessive force claims against DelPrete, Fanizzi, and Smirnov. DelPrete, Fanizzi, and Smirnov's own deposition testimony puts them in physical contact with Plaintiff during the Incident. Plaintiff alleges that after Truscelli punched him, the other officers started "raining punches and kicks" on him. (Pl. Lanorith Dep. Tr. 47:7-11.) It is undisputed that Plaintiff was taken to the hospital for medical treatment following the alleged assault and suffered a broken nose. (See Pl. 56.1 ¶¶ 85, 91; Defs. Opp'n 56.1 ¶¶ 85, 91.) Plaintiff testified at his deposition that he lost consciousness during Incident. (Pl. Lanorith Dep. Tr. 52:11-24.) Construing these facts in the light most favorable to Plaintiff, the court cannot conclude that Plaintiff's excessive force claim against these officers fails as a matter of law, as a reasonable jury could return a verdict for Plaintiff based on this evidence. See Liberty Lobby, 477 U.S. at 248 ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); see, e.g., Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that plaintiff's excessive force claim should have survived summary judgment where plaintiff alleged a police officer "'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back'" and plaintiff suffered "bruises lasting a 'couple weeks'" as a result of the incident).

Accordingly, Defendants' Motion is denied with respect to Plaintiff's excessive force claims against DelPrete, Fanizzi, and Smirnov, but granted with respect to Velez and Litrell.

## C. Malicious Prosecution

In his opposition to the Motion, Plaintiff states that he will voluntarily dismiss his malicious prosecution claims against Defendants Smirnov, DelPrete, Litrell, and Velez. (Pl. Opp'n at 18 n.2.) Therefore, the court need only address Defendants' Motion with respect to Truscelli.[11]

To support a claim for malicious prosecution under Section 1983, a plaintiff is required to establish that (1) "the defendant initiated a prosecution against the plaintiff"; (2) "the defendant lacked probable cause to believe the proceeding could succeed;"[12] (3) "the defendant acted with malice;"[13] (4) "the prosecution was terminated in the plaintiff's favor;" and (5) "there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."[14] Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013) (citation omitted).

Plaintiff was charged with assault in the second degree pursuant to New York Penal Law § 120.05(3) and criminal possession of a controlled substance in the seventh degree pursuant to New York Penal Law § 220.03. (Crim. Compl.) It is undisputed that Truscelli swore out the

---

[11] Defendants have not moved for summary judgment with respect to Plaintiff's malicious prosecution claim against Fanizzi.

[12] "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases. . . Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013) (internal quotation marks and citation omitted).

[13] "A lack of probable cause generally creates an inference of malice." Boyd v. City of N.Y., 336 F.3d 72, 78 (2d Cir. 2003).

[14] Plaintiff must also demonstrate that the post-arraignment liberty restraint "resulted from the initiation or pendency of judicial proceedings." Rohman, 215 F.3d at 215 (citation omitted).

criminal complaint which charged Plaintiff with the aforementioned crimes. (See Crim. Compl.; see also Defs. 56.1 ¶ 54; Pl. 56.1 ¶ 54.) As such, it is clear that Truscelli was personally involved in the initiation of criminal charges against Plaintiff.

Notwithstanding, Defendants argue that Truscelli is entitled to qualified immunity on Plaintiff's malicious prosecution claim because Truscelli "was reasonable in relying on his observations of Detective Fanizzi's injuries to determine that there was a viable Assault charge against plaintiff."[15]  (Defs. Mem. at 11.)  New York Penal Law § 120.05(3) provides that a person is guilty of assault if "with intent to prevent a . . . police officer . . . from performing a lawful duty, . . . he or she causes physical injury to such . . . police officer."  In Defendants' view, "Truscelli could reasonably determine that—because of Detective Fanizzi's injury—plaintiff must have tried to prevent Detective Fanizzi from attempting to arrest plaintiff, thereby causing an injury to Detective Fanizzi."  (Defs. Mem. at 12.)

The court finds that Defendants' statement is conclusory and does not demonstrate that there was probable cause to arrest Plaintiff for assault of a police officer, much less prosecute Plaintiff for such offense.  See Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013) ("[T]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases.").  Defendants make much of the fact that New York Penal Law § 120.05(3) "does not require an intent to actually hurt a police officer," arguing that "it does not matter exactly how Defendant Fanizzi sustained his injury, as long as the injury was sustained as

---

[15] Defendants have not argued that Plaintiff's malicious prosecution claim should be dismissed because there was probable cause to believe Plaintiff guilty of the criminal possession of a controlled substance charge. Cf. D'Angelo v. Kirschner, 288 F. App'x 724, 726-27 (2d Cir. 2008) (citing Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989) ("[A] finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor."). For the reasons articulated in Section III.A.3.b, the court cannot conclude as a matter of law that there was probable cause to arrest Plaintiff on this drug possession charge, much less probable cause to believe Plaintiff guilty of this charge. As such, Plaintiff's malicious prosecution claim as to the drug possession charge survives summary judgment.

a result of an interaction with plaintiff in which plaintiff was intending to prevent Defendant from performing a lawful duty." (Defs. Reply at 6.) Defendants are correct that "[u]nder the plain wording of this subdivision it is evident that a defendant may be convicted even though the injury caused is unintended or accidental." People v Campbell, 532 N.E.2d 86, 87 (N.Y. 1988). That said, the fact that Fanizzi was injured does not prove that Plaintiff intended to prevent Fanizzi from lawfully arresting him. People v. Bueno, 960 N.E.2d 405, 413 (N.Y. 2011) ("The intent to injure and the extent of the injuries do not suffice to show the intent to prevent the victim from performing a lawful duty required under subdivision (3) of Penal Law § 120.05. The viciousness of the assault does not rationally lead to the conclusion that defendant had the specific requisite intent to interfere with the victim's performance of his lawful duties . . . .").

The question of whether Plaintiff caused Fanizzi's injuries with intent to prevent Fanizzi from lawfully arresting him implicates material facts that are in dispute. In Plaintiff's telling, Plaintiff did not resist arrest and therefore did not cause any injury with intent to prevent Fanizzi from arresting him.[16] As noted in Section I.A., Plaintiff alleges that he was peaceably complying with the officers' directions when they began assaulting him, while Fanizzi recounts a struggle with Plaintiff that resulted in his shoulder injury. Plaintiff and Defendants' version of the Incident differ dramatically; however, for purposes of Defendants' summary judgment motion, the court must view the facts in the light most favorable to Plaintiff. See Fireman's Fund Ins. Co., 822 F.3d at 631 n.12. As such, while it is possible that Plaintiff resisted arrest and caused Fanizzi's shoulder injury, as Plaintiff points out, "[i]t just as reasonable [to conclude] that Defendant Fanizzi injured himself by unlawfully assaulting [Plaintiff]."[17] (Pl. Opp'n at 20.)

---

[16] Plaintiff testified at his deposition that Truscelli handcuffed him; however, Fanizzi testified that he handcuffed Plaintiff. (Compare Pl. Lanorith Dep. Tr. 42:22-44:2, with Pl. Fanizzi Dep. Tr. 71:4-72:12.)

[17] As articulated supra in Section III.A.3.b., the court cannot conclude as a matter of law that Fanizzi was performing a lawful duty when he attempted to arrest Plaintiff.

Based on these disputed facts, the court therefore determines that there is a genuine dispute as to key facts such that a jury could reasonably decide either way as to whether there was probable cause, or even arguable probable cause, to believe Plaintiff was guilty of second degree assault. Summary judgment is therefore inappropriate. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Weyant</u>, 101 F.3d at 858 (holding that because officers' version of the facts is "sharply disputed," "the matter of the officers' qualified immunity . . . cannot be resolved as a matter of law"); <u>Ostroski v. Town of Southold</u>, 443 F. Supp. 2d 325, 339 (E.D.N.Y. 2006) ("Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to prosecute for resisting arrest, defendants are not entitled to qualified immunity as a matter of law."). Accordingly, Defendants' Motion as to Plaintiff's malicious prosecution claim must be denied.

### D. Denial of a Fair Trial

As with his malicious prosecution claims, Plaintiff states that he will voluntarily dismiss his denial of a fair trial claims against Defendants Smirnov, DelPrete, Litrell, and Velez. (Pl. Opp'n at 21 n.3.) Therefore, the court need only address Defendants' Motion with respect to Truscelli.[18]

Plaintiff alleges that Truscelli and Fanizzi "manufactured the underlying false allegations and forwarded this information to the DA's Office knowing that it would be used against [Plaintiff] at trial." (Am. Compl. ¶ 24.) Plaintiff avers that these misrepresentations "caused Plaintiff . . . to be prosecuted without any probable cause until all of the charges against him were dismissed outright on December 12, 2012." (<u>Id.</u> ¶ 60.)

---

[18] Defendants have not moved for summary judgment with respect to Plaintiff's denial of a fair trial claim against Fanizzi.

Claims of denial of the right to a fair trial "based on fabrication of information" arise in cases where "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (describing the standard established in Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)). "A plaintiff need not have been tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors." Nnodimele v. Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016) (citing Ricciuti, 124 F.3d at 127, 130). A plaintiff must show that he suffered a deprivation of liberty "as a result" of the forwarded false information. Garnett, 838 F.3d at 279 (citing Ricciuti, 124 F.3d at 123).

Defendants argue that even if the information Truscelli provided to the DA's Office was false, he is entitled to qualified immunity because (1) the information he provided was based on what Fanizzi told him and (2) "a reasonable officer who did not see the interaction between Fanizzi and plaintiff could reasonably conclude that, based on Detective Fanizzi's undisputed injury, plaintiff caused an injury to Detective Fanizzi during the course of his arrest."[19] (Defs. Mem. at 14.)

The court cannot determine as a matter of law that Truscelli provided only truthful information to the DA's Office. The criminal complaint states that Truscelli was informed by Fanizzi that Fanizzi "attempted to arrest [Plaintiff]" and Plaintiff "thr[e]w [Fanizzi] on the ground causing inju[r]ies, including, but not limited to, a sprained right shoulder." (Crim. Compl. at 2.) When asked at his deposition whether Fanizzi did in fact relay these facts to him

---

[19] Plaintiff has not specified whether the allegedly false information Truscelli conveyed to the DA's Office relates to the drug possession charge or the assault charge. Defendants' arguments focus exclusively on the assault charge.

before he swore out the criminal complaint, Truscelli answered: "I believe so yes." (Pl. Truscelli Dep. Tr. 66:4-22.) However, Plaintiff casts doubt on the veracity of Truscelli's testimony by pointing to Fanizzi's deposition testimony. Fanizzi testified that Plaintiff did not throw him to the ground but rather Fanizzi and Plaintiff "fell to the ground." (Pl. Fanizzi Dep. Tr. 98:24-99:6.) When asked why Truscelli would state in a criminal complaint that Plaintiff threw Fanizzi to the ground, Fanizzi responded "I don't know." (Id. 99:7-14.) While a close question, the court determines that Plaintiff has identified facts from which a reasonable jury could conclude that Truscelli did not truthfully relayed what Fanizzi had told him to the DA's Office. Cf. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (holding that a plaintiff opposing a defendant's "properly supported [summary judgment] motion . . . must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden"). In order to ascertain whether Fanizzi did in fact tell Truscelli that Plaintiff had thrown him to the ground, the court would need to assess Fanizzi and Truscelli's credibility, which would be inappropriate on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 255; Jeffreys, 426 F.3d at 553. In view of the conflicting information, the court cannot determine as a matter of law that Truscelli accurately relayed the information Fanizzi provided to him to the DA's Office, entitling him to qualified immunity. Moreover, for the reasons articulated supra in Section III.C, the fact that Fanizzi was injured does not prove that Plaintiff caused Fanizzi's injuries with intent to prevent Fanizzi from lawfully arresting him.

Assuming arguendo that Truscelli fabricated information about Plaintiff's wrongdoing and relayed this information to the DA's Office, Truscelli would not be entitled to qualified immunity on Plaintiff's denial of a fair trial claim. Qualified immunity is unavailable where "the action violates an accused's clearly established constitutional rights" and "[w]hen a police officer

24

creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Garnett, 838 F.3d at 275-76 (quoting Ricciuti, 124 F.3d at 130 (alteration in original) (internal quotation marks omitted)).

Accordingly, Defendants' argument that Truscelli is entitled to qualified immunity on Plaintiff's denial of a fair trial claim is unavailing. The court therefore denies Defendants' Motion on this claim.

### E. Failure to Intervene

Defendants move for summary judgment with respect to Plaintiff's failure to intervene claim against Litrell, DelPrete, Velez, and Smirnov. (Defs. Mem. at 1.) The court addresses the bases for the Motion, which differ among Defendants, separately.

#### 1. Plaintiff's Failure to Intervene Claims Against DelPrete and Litrell Are Timely

Defendants argue that "DelPrete and Litrell cannot be liable for failure to intervene on any alleged excessive force, false arrest, or denial of a fair trial because they were named after the statute of limitations expired on the underlying claims." (Defs. Mem. at 15.) The court has already determined that Plaintiff's false arrest and excessive force claims against DelPrete and Litrell are timely. (See supra Sections III.A.1. and III.B.1.) Moreover, although Plaintiff has agreed to voluntarily dismiss his denial of a fair trial claim against DelPrete and Litrell among others (see Pl. Opp'n at 21 n.3), the court must now determine whether those claims are timely in order to determine whether Litrell and DelPrete can be held liable on a failure to intervene theory. For the reasons articulated supra in Section III.A.1., Plaintiff's denial of a fair trial claims against DelPrete and Litrell "relate back" to the date of the original complaint— February 6, 2015—and are therefore timely.

Accordingly, because Plaintiff's underlying false arrest, excessive force, and denial of a fair trial claims against DelPrete and Litrell are timely, the court rejects Defendants' argument that Plaintiff's failure to intervene claims against these defendants should be dismissed as time-barred.

### 2. Plaintiff Direct Participation Claims and Failure to Intervene Claims Can Be Pleaded in the Alternative

Defendants further argue for dismissal of the failure to intervene claims, maintaining that a defendant cannot simultaneously be held liable on a theory of direct participation and a theory of failure to intervene. (See Defs. Mem. at 15.) The court rejects this argument. Although a failure to intervene claim cannot ultimately be sustained against a direct participant in the alleged primary violation, Plaintiff is entitled to plead a failure to intervene claim as an alternative to direct liability. See, e.g., Guerrero v. City of N.Y., No. 16-CV-516 (JPO), 2017 WL 2271467, at *4 (S.D.N.Y. May 23, 2017) ("Though a failure to intervene theory of liability is inapplicable where a defendant is a direct participant in the alleged primary violation, at this stage, these two claims may be pleaded in the alternative."); Buchy v. City of White Plains, No. 14-CV-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) (allowing excessive force and failure to intervene claims "to proceed in the alternative beyond the summary judgment stage"). As such, the court declines to grant summary judgment in favor of Defendants on this basis.

### 3. Plaintiff's Failure to Intervene Claims on Underlying Malicious Prosecution and Denial of a Fair Trial Claims

Defendants argue that "Plaintiff has no evidence to show that Defendants Litrell, DelPrete, Velez, and Smirnov knew plaintiff's rights were being violated as related to the claims for malicious prosecution or denial of a right to fair trial." (Defs. Mem. at 16.) Plaintiff does not address this argument in his opposition, nor has he identified evidence suggesting that Litrell, DelPrete, Velez, or Smirnov were involved in preparing the criminal complaint or were aware of

the alleged false statements made by Truscelli in the complaint and had "a realistic opportunity to intervene to prevent the harm [to Plaintiff] from occurring," a prerequisite for liability to attach.[20] Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Accordingly, Plaintiff's failure to intervene claims against Velez, Litrell, Smirnov, and DelPrete are dismissed insofar as they relate to Plaintiff's underlying malicious prosecution and denial of a fair trial claims.

### 4. Plaintiff's Failure to Intervene Claims on Underlying False Arrest and Excessive Force Claims

In his opposition brief, Plaintiff clarifies that he does not bring failure to intervene claims against Truscelli, Fanizzi, Smirnov, or DelPrete on his underlying excessive force and false arrest claims. (Pl. Opp'n at 23.) He does, however, bring failure to intervene claims against Litrell and Velez on his underlying false arrest and excessive force claims on the basis that those officers "could have prevented the excessive force and false arrest of [Plaintiff]." (Id.)

Defendants do not appear to move for summary judgment with respect to the failure to intervene claim against Litrell on the underlying false arrest and excessive force claims, nor did their opening memorandum of law in support of the Motion make any arguments with respect to Velez. Defendants argue in their reply brief that the failure to intervene claim against "Velez should be dismissed because plaintiff has no evidence to demonstrate that Defendant Velez could have intervened in his alleged false arrest or excessive force (or any other claimed violation)." (Defs. Reply at 5.) They assert that "Plaintiff has no evidence to show that Defendant Velez was

---

[20] The so-called "collective knowledge doctrine" allows knowledge possessed by one police officer to be imputed to others working on the same team, see United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001), but this doctrine "has traditionally been applied to assist officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge," Simone v. United States, 642 F. App'x 73, 75 (2d Cir. 2016) (summary order) (quoting Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003)).

even present for any of the alleged beating [Plaintiff] received. The only evidence in the record is Defendant Velez'[s] testimony that he was dealing with third party D.G. the entire time on scene, on the other side of the vehicle with no view of plaintiff." (Id. at 5-6.) Because Defendants raised this argument for the first time in their reply memoranda of law, the court declines to consider it. See U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., No. 02-CV-4182 (CSH), 2006 WL 3146422, at *3 (S.D.N.Y. Oct. 30, 2006) ("The Court need not consider a new argument raised for the first time in a reply brief, as arguments presented in this fashion deny the opposing party a fair opportunity to respond.").

Accordingly, the court declines to grant summary judgment on Plaintiff's failure to intervene claims against Litrell and Velez with respect to Plaintiff's underlying false arrest and excessive force claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion (Dkt. 34) is GRANTED IN PART AND DENIED IN PART.

Summary judgment is granted in favor of Defendants on the following claims. These claims are therefore DISMISSED:

- Plaintiff's false arrest claim against Velez;

- Plaintiff's excessive force claims against Velez and Litrell;

- Plaintiff's failure to intervene claim against Velez, Litrell, Smirnov, and DelPrete with respect to Plaintiff's underlying malicious prosecution claim;

- Plaintiff's failure to intervene claim against Velez, Litrell, Smirnov, and DelPrete with respect to Plaintiff's underlying denial of a fair trial claim;

28

The following claims survive summary judgment:[21]

- Plaintiff's false arrest claims against Truscelli, Fanizzi, Smirnov, Litrell, and DelPrete;

- Plaintiff's excessive force claims against Truscelli, Fanizzi, Smirnov, and DelPrete;

- Plaintiff's malicious prosecution claim against Truscelli and Fanizzi;

- Plaintiff's denial of a fair trial claim against Truscelli and Fanizzi;

- Plaintiff's failure to intervene claim against Truscelli and Fanizzi with respect to Plaintiff's underlying malicious prosecution claim;

- Plaintiff's failure to intervene claim against Truscelli and Fanizzi with respect to Plaintiff's underlying denial of a fair trial claim;

- Plaintiff's failure to intervene claim against Velez and Litrell with respect to Plaintiff's underlying false arrest claim;

- Plaintiff's failure to intervene claim against Velez and Litrell with respect to Plaintiff's underlying excessive force claim;

Plaintiff is DIRECTED to file a stipulation of voluntary dismissal with respect to the following claims:

- Plaintiff's malicious prosecution claims against Smirnov, DelPrete, Litrell, and Velez;

- Plaintiff's denial of a fair trial claims against Smirnov, DelPrete, Litrell, and Velez;

- Plaintiff's failure to intervene claim against Truscelli, Fanizzi, Smirnov, and DelPrete with respect to Plaintiff's underlying false arrest claim; and

- Plaintiff's failure to intervene claim against Truscelli, Fanizzi, Smirnov, and DelPrete with respect to Plaintiff's underlying excessive force claim.

---

[21] This list of claims surviving summary judgment includes those claims as to which Defendants did not move for summary judgment.

The court DIRECTS the parties to follow the court's Individual Rules for pre-trial procedures.

SO ORDERED.

s/ Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 21, 2017

NICHOLAS G. GARAUFIS
United States District Judge